Next case is Polycom v. Fullview, 2018-18-29. Mr. Tamburo, when you're ready. May it please the court. Good morning, Your Honors. Sal Tamburo with Plank Rome for Appellant Polycom. I'm going to use 12 minutes now and save three for a bottle. At least that's the plan. Polycom is here asking this court to reinstate two different grounds of rejection of the 7-11 patent. First is the first ground is obviousness over the Long and Uehara. Second ground is anticipation over the Long reference. I'll talk about the obviousness grounds first. The PTAB entered a ground of rejection based on the Long and Uehara and the Fullview elected to un-reopen prosecution. The examiner withdrew that obviousness rejection and it came back to the PTAB and the only reason for affirming that withdrawal of the obviousness rejection by the PTAB was its misreading of the claims to require a substantial offset and it also read the Long reference to disclose only a small offset and so it didn't believe that that limitation was met by the Long. So the claim does not require a substantial offset, Your Honors. The claim requires, I'll just quote it, it says two fields of view corresponding to images that are merged as a portion where the images are merged that has viewing directions that are substantially similar to the viewing directions of the other portion and wherein the viewing directions within each of such two portions appear to originate substantially from a point that is offset from the point for the other one of such two portions. That's a lot of words. I can direct you to the appendix at 128 which is figure 14 of the 711 patent which illustrates this claim perfectly. It shows that you have these four merged images, these four wedges in the figure and when you have two adjacent portions or two adjacent images there's a portion that is on the edge of each image that's adjacent to the portion of the next image. So figure 14 you have a portion that's labeled 520 and that's one portion and another portion labeled 518 which have substantially similar viewing directions which are both pointing northeast in that figure and as you can see the point of origin of those portions is offset which is at the center of the of the figure. It doesn't say, there's not a large offset, small offset, it's just an offset. That's exactly what the claim says. LeLong discloses the same offset. LeLong says that there's no absolute size of the offset. It describes it in terms of five to ten centimeters as one example and it says that could be considered small in light of or only in relation to the distance to the viewed scene. So if I'm standing here at five to ten centimeters and I'm this far away from you, say five meters away, this could be considered a small offset. But the patent, and that's it says if the obviousness here. Right now it's obvious obviousness your honor. I'm arguing that the the claim does not say substantially offset and it just says offset and LeLong discloses offset and when that error is corrected, that was the only basis for affirming the examiner's withdrawal of the obviousness rejection. When that error is corrected, Polycom believes the LeLong talks about the offset in relative terms. If I'm standing a foot before your honors, that same five to ten centimeters could be a larger offset clearly. So LeLong, when you read it properly, discloses an offset. The claim discloses an offset. It's met by LeLong. The rejection should be reinstated based on Polycom's opinion. Supposing we find that the PTAB abuses its by reaching the new ground of rejection. Okay, that leaves us with the original, which is what you want. But the PTAB didn't address the other elements of the asserted claims and it didn't render a decision as to whether LeLong anticipates. Your honor, the only limitation that the PTAB addressed on the anticipation, you talk about the anticipation rejection, the only limitation addressed was mirrors because that's the only limitation the examiner found was missing. So the examiner withdrew. The examiner originally had entered a rejection on anticipation on LeLong. She withdrew it because she didn't find that LeLong disclosed mirrors because there's some disclosure in LeLong that says mirrors are not necessary under certain circumstances. The PTAB said, you're wrong, examiner. They vehemently disagreed. That's the only, that's the only limitation they addressed. They found it was disclosed by LeLong and we think, we don't understand. They reached that conclusion about the mirrors and LeLong. They automatically then moved to the new ground. They didn't actually have a full decision on one other. You're right, your honor. I mean, that's exactly, we read it and we were wondering why the next. Time came for you to complain on the rehearing. You did not raise one of the two. That's true. And your rules require you to raise that on rehearing in order to preserve it for appeal here. Your honor, I don't think the rules require us to request a rehearing on an issue in order to preserve it for appeal. I think the opposite is true, your honor. Well, we can disagree about that, but our case law is such that if you don't present an issue on rehearing before the board, then that issue is gone. I think Magnum says differently, your honor, but I, you know, I, that's what we, that's what we understand. That it's, it is, we didn't have to file a rehearing request. You have to file a rehearing, but when you do, and the reason for it is in order to give the board a chance to recoup so as possibly to save even appeal up here. So if you had presented your 102 issue to the board on rehearing, we would, the board would have been able to say what it would say. I understand, and so by having failed to raise the issue in your rehearing, and the rules clearly require you to raise every issue that you want to have the board consider on rehearing, and the rehearing decision becomes a decision that's appealed up here, and the second board opinion from which you took a rehearing but didn't include 102 is a roll-up of the previous board as well. So the 102 problem that you wanted to raise at the time in my judgment for you to raise it was on your rehearing. Well, your honor, that's, you know, my understanding is if you're going to, if you, you don't have to file a rehearing request, and you don't have to, you don't have to appeal, you don't have to request a hearing on every, of course you're not obligated to file a petition for a hearing. Nobody's saying you're obligated, but if you do, then there are a set rules you play by. Okay, your honor. That's not our understanding under Magnum, but thank you. So that, so I think we just discussed anticipation. We think that that should be reinstated because the one limitation was found. On obviousness, we brought the misreading of the limitation to the made, they compounded the error by misreading the claim now to require an insubstantial offset. So they went from a substantial offset. Was the disagreement at the board, I mean the dissent on this very issue? The dissent. Refresh my recollection. Yeah, the dissent corrected the board saying it's an offset. The board. So there's a debate between inside the board on this offset issue. I believe there was, your honor. I believe. That's what I'm trying to get at. I mean, because it's. I can confirm that on Roboto, your honor, but I know that. And part of the offset issue is what does the prior art teach? Yeah. You've got a combo, if you will, of a claim destruction issue, which is a de novo review, and then you have a what does the records teach, which is a substantial evidence review. Right. And if I can. So they found there was a substantial offset originally, then they found an insubstantial offset. And then when they were defending their finding of an insubstantial offset, they went to Lalonde, which says a mirror is not necessary when the offset is small. So then they found another reason to uphold the withdrawal of the of the obviousness rejection by saying, well, the claim now says insubstantial offset. So we're going to read Lalonde to say you don't need a mirror. So you're not going to be performing the redirecting limitation in when you have an insubstantial offset. Both readings are wrong. The claim just says offset. Lalonde discloses an offset. And we correct reading of the claim is if this court would read the claim correctly as it's written, and it reads Lalonde as it's written, we think that it really should be reinstated, this rejection of obviousness based on the Lalonde and you were here. So just to come back to a point that Judge Wallach made reference to, which is going to be part of the argument from your colleague. Your view is that the, quote, authority issue, the power of the board to raise the 103 anew, I think you're saying that your adversary can't raise that issue because he didn't file a cross appeal. That's one of the things we're saying, Your Honor. Why is that so? Why is what your adversary arguing enlarging the judgment? He's asking for a modification of the judgment. He's saying that the obviousness rejection never should have been included in the first place. He's not saying it should be affirmed. He's saying it should be modified to strict, to be stricken from the original order from the PTAB. Isn't that effectively a jurisdictional question? I'm not sure I understand. Well, there's an argument to be made that the PTAB's decision to reach a new ground is effectively a question of its jurisdiction because the relevant language derives from the statute. Well, that may be, I'm not sure, I never thought of it until those terms, Your Honor, but the PTAB was pretty clear under 41.77. It has the authority and now it's not unlimited authority. The QI press case from this court kind of put some structure around that. It says that if the references are already before the board, as they were here, and in that case, in particular, QI press, there was an inconsistency, at least as this court perceived by the board, where the examiner's decision, it entered some grounds of rejection and then it didn't enter another ground, but this court believed that it was totally inconsistent and it said the board under its authority under 41.77 should have had the obligation to enter a new ground of rejection, which is exactly what the board did here. It saw that the references were already before it and it saw an inconsistency with the examiners rejecting the claims. The examiner rejected the claims based on anticipation. The case is a little different here because what happened was that after the first cut was made about what grounds are going to be instituted, there was an appeal up to the director. And the appeal up to the director, which came down, the director said under no circumstances should you review 102 under Lalonde and under no circumstances should you review 103 under a combination of the two references. That's very clear from the director saying do not do it. Yes, your honor. And yet the board, and presumably the board was unaware of that? No, they were aware of it. That preclusion was on Polycom. Polycom could not appeal it. The examiner could not review it, but the board... Yeah, but if you have a situation where someone comes in and asks for a re-exam and the first person that looks at it on behalf of the director of the examiner says, well, I'll institute on this and you don't like that result, you want more, you go up to the director, right? That right of appeal. And the director in this case absolutely said do not, you may not re-exam 102 on Lalonde and you may not re-exam on 103 under a combination of Lalonde and the other reference. Nonetheless, the board did it. The board found the authority in 4177 because of the inconsistencies that it perceived below. There was a rejection on... I understand that, but so your argument would be that the board can tell the director to go up in the lake. Yeah, that's my... How do they have the authority to do that? The authority is 4177 is pretty... The regulation makes very clear that they have the authority to enter a new ground of rejection and they have to then allow the party to go back and do some more exam if they'd like. That's exactly what happened. They had their opportunity to re-argue it below, but the inconsistency, if I could just get this point out, the inconsistency that the board saw was that there was a rejection on anticipation of Lalonde, there was a rejection on obviousness of anticipation on Uehira, yet there was no objection or rejection of obviousness in light of the two. So the board said how can that stand? You have an anticipation on one, an anticipation on the other, yet a combination. I mean the anticipation was there was no authority to do that. I mean the short of the matter is that the director cut off, said you may not review this patent for anticipation under Lalonde. Right? And you read the director's decision on the appeal up to the director. Right. So when the board is saying, well golly, I got this problem under 102, which is causing me to think I should go to 103, they shouldn't have been thinking about 102 at all. Well, that was appealed to the board. The withdrawal of the 102 rejection was appealed to the board. Right. There was a rejection under 102. Why wouldn't the board have looked at it and said, why was the examiner looking at 102 under Lalonde in the first place? Because he'd been told he can't do it. Well, it was appealed. What happened here was the examiner got out in front of the board, in front of the director. Right? No, your honor, there was an anticipation rejection under Lalonde. It's not like the director told the examiner she cannot decide Lalonde anticipation. There was a rejection of Lalonde on anticipation that was withdrawn. And then that was appealed by Polycom. And the examiner, the PTAB disagreed with the examiner and did not enter the ultimate rejection on 102. There was a rejection, your honor, Appendix 275. All I'm saying is that Appendix 674, we have the director's decision on appeal up to the director about the question of what is going to be fair game for the re-exam, right? So look at page 674. And it's in the second paragraph from the bottom. As such, the request does not present a reasonable and cognitive request to prevail on any rejection which Lalonde has solely relied on to teach the reflective area limitation. Page 674, that's the director when a challenge has been raised to whether the grounds that were going forward were proper. So the director says, keep your hands off of Lalonde for teaching the reflective area limitation. That's the mirrors. And the board didn't? The board didn't, the examiner. How can the examiner talk about Lalonde and reflection? The examiner found Lalonde has no mirror. Where did the examiner get the authority to say that when the director has said, keep your hands off of her? And then if you go down a little lower in the final opinion, you'll see there that the director said as to issue W, which is the combination of Lalonde, and I can't pronounce the other one under 103. He said, keep your hands off that too. Council, your time has expired. We'll give you three minutes at which time you will have thought through the answer. Thank you. Mr. Lazaroff. May it please the court. I'd like to address the question of whether the board misconstrued the term substantially in the, in its decision after the reopened prosecution. Just as we're on this other topic, can we just clear air here on the one thing before we move back to the 103. This is on the sort of power authority issue. Why is it that you don't have to file a cross appeal in order to raise that issue? Well, our view is that we are only using that as an alternative in the event that for some reason, the court should not affirm the board on the obviousness issue. But you had a different decision. Well, it was. You don't get a decision that the claims are not obvious. Well, here's the... Right? Right? Right. On the 103 issue, you get a decision if you win that says, well, the board was right. These claims are not obvious. Right. Well, on your power issue, you've got an entirely different work. Well, I, I, I guess, much in order, you know, a lot of sweeping consequences that apply well beyond the limits of this particular case. The 103 is very particular just to you. Well, this, the, the only issue here then is whether the board exceeded its authority. I know I want to stick with the question of whether or not you had to file a cross appeal because we don't have any jurisdiction. Okay. If you don't have a cross appeal. The, the case that is cited against us is a granite management case. And in this, the government won on summary judgment and the court in the proceeding ruled that it had entered into a contract. And on appeal, the government asked for both affirmance of the summary judgment and specifically in its request for relief, reversal of the decision on agreement. The court in that case said because they were asking for a reversal in addition to the affirmance, they needed to file a cross appeal court said they could have argued the same issue simply in affirmance of the grant of summary judgment. So our view is that we're not asking for any relief beyond affirmance of the board's decision. If you affirm the board's decision, we don't care if you go further and even address the issue of whether the board abused its discretion in issuing a new ground of rejection. So the question for us is whether or not, that being said, whether or not you're enlarging the size of the decision in order to get your And if our papers are in any way ambiguous, I would say, assuming for purposes of not to interrupt you, but your time is short, assuming for purposes of argument that I would say, well, you should have filed a cross appeal. If the question before us is a jurisdictional question, as opposed to a non-jurisdictional question, then we would be required to greet the issue, even if you hadn't filed a cross appeal. Of course. So the question of whether or not there is a jurisdictional issue here is novel and interesting. It may be informed by our recent decisions in this court in the fall after the fallout from the so-called SAS case that you the new inter-parties free exams on less than all the grounds are served. And there was a question about whether or not that was a question of the jurisdiction of the PTAB to do so. And yet, nonetheless, when the case came up to us, we decided it was not, that was not a jurisdictional issue for purposes of our review. So the question in my mind is, why isn't this situation similar to the SAS situation in which we said, well, the ultra-various notion that was a field at the PTO, a jurisdictional issue, nevertheless, was not a jurisdictional issue here. Yeah. Well, we framed our argument as an abuse of discretion, saying that the rule gives the board discretion to issue a new but for them to exercise that discretion in the face of the statutory primacy of the director to decide what should be re-examined is an abuse of that discretion. And we were only looking for a very narrow decision here that for the board to take a particular issue, issue W, which had been twice turned down, was that abuse of discretion. Well, it's, I think it's a fascinating but very difficult issue, a question of the collision between the authority, clear authority, of the board to raise up a new ground for rejection. Well, unless the court should decide that it's a jurisdictional issue, I would point out that an affirmance on the obviousness issue pretty much does not mean that the board makes it a simple case. If the patent is not obvious based on the two references, it's not obvious based on each one individually. Well, we've got a very difficult issue in front of us to decide, potentially. Are you saying, what you just said, are you saying that in the event the court were to affirm on the 103 issue, you would withdraw your challenge? Yes. In as much as we've always considered it to be an alternative. Well, that's what I mean, but I'm simply looking for a ground here to say, so you're saying that in the event that there's an affirmance on the 103, you'd withdraw your challenge on the, what I'm calling the authority issue. Yes. Okay. No question. Okay. So, why should the court decide the 103 issue in our favor? I wanted to respond to the alleged claim misconstruction. And this shows up not in the context of construing a claim, but in the board's response to what it viewed as an argument of Leelong that's from pages appendix 26 and, oh, excuse me, 27 and 28. In other words, according to requester's initial argument, Leelong discloses that viewpoints are both substantially similar, but at the same time are substantially offset. And it was in response to that argument that the board down below talks about the substantial offset. There's some clarification of this given to us in Judge Baumeister's concurring opinion. On appendix page 15, he says the majority in using the phrase substantially offset was really following the shorthand convention the patent owner and requester employed. And he references a footnote in the, at page 819 of the appendix where the requester says we kind of got into this bind where we started using substantial in both places as shorthand. And he says it started with our own expert's declaration in paragraph 19 at appendix page 758 where he does it. So, I think it's a mistake to take what the board says here as a misconstruction of the claim. And in fact, if you take this shorthand and unpack it into the constituent elements that the shorthand is supposed to represent, it is very true that that is what is required by the claim. Assuming for the sake of argument that the board did drop the ball and make a mistake in determining there was substantial offset, I think there are four reasons why the board should still have rejected this Lelong construction that they provided. One is the very reason that the board concludes with, he says in any event, they don't explain sufficiently how you can have two inconsistent conditions existing simultaneously. And those inconsistent conditions will be there whether the offset is big or small. So, in that if they misconstrued it, it was immaterial because their reasoning would apply. Reason number two is the reason given by the majority opinion in the rehearing, which is that in response to Polycom's argument that it doesn't have to be big, it can be tiny. And the board in its majority said, well, if it's really tiny, then you bump up against the statement in Lelong that in this situation, a reflective surface is unnecessary. So, there would be no motivation to add that element, which is an element of every claim. The third reason is the one given by the concurring opinion, Judge Baumeister, who essentially says, I interpreted this as negligible versus non-negligible. Patent calls for a non-negligible offset, whereas Lelong essentially says, we're trying as hard as we can to make these things but only non-coincident, is a third reason for throwing away the argument. Fourth one is the one that shows up on pages 61 through 64 of our brief. And that is the argument that if you took the figure that is in the appellant's brief, page 12, to allegedly show this situation, you would have the very same, you would develop the blind regions and that Lelong, it would not, one would not be motivated to make the offsets that way because Lelong says, absolutely, all the details of the panoramic scene are recorded by one or the other camera so that no object under surveillance is left out. So, you would be contradicting if you did that. With respect to that figure 1G that is shown there, I would note that on page 12 of appellant's brief that this is not a figure that appears in Lelong. This is a construct of counsel and so far as I can tell it doesn't show up in the record any place before this. The last point I would like to make in the minute and a half that I have left is our contention that this is a case that is based on substantial factual evidence. The evidence that was required to be produced for the examiner to overcome the new ground of rejection, the declarations of Dr. Netravalli and Dr. Fantone that were the basis of the examiner's determination and were affirmed by the board in its decision and our argument is that this constitutes the sort of substantial evidence that persuaded the board and was to be given deference. The dissent confirms really that that is what so because the dissent says contrary to the examiner's determination and the majority's conclusion, in my view, Netravalli doesn't overcome the new ground of rejection and later he says basically I view the evidence differently than the majority does and we cited the Elbit case which I believe is a case that Judge Wallach wrote for the proposition that when the evidence will support two different conclusions, it's the epitome of the kind of case where the decision to take one has to be treated as substantial evidence. Thank you. Thank you, counsel. Mr. Tamburo has some rebuttal time, three minutes. Yes, your honor. Back to the original question about the petition or the decision on petition. If you'll note on appendix 663, this petition was addressing only claims 22 to 24 of ground W or 22 and 24 at all. Everything else had been instituted. This was a petition on the decision not to institute 22 to 24. We are not looking to have 22 to 24 anticipated by the law. That's not in part of the claims that we're appealing. So this whole decision with these preclusions were directed only to those three claims, your honor. If I can... What page are you on, six? I'm on 663 and 664. If I can move on. There's no question that the PTAB misread the claim. I'd like to just read some quotes what the PTAB said about substantial offset. It said, in view of the explicit disclosure of the long that such an offset would be considered small, we do not agree with requester's original argument that one of skill in the art would have considered such an offset to be substantial as recited in claim one. That's appendix 28. There's another quote in appendix 28 which says it again. It says, requester does not explain sufficiently how the same viewpoints of the long would have been considered by those of skill in the art to be both substantially similar and substantially offset from each other at the same time. That's example from 28. Again, appendix 10 in the claim one does not recite or require that the offset points be substantial. Even assuming requester to be correct that claim one does not require the claimed offset to be substantial. Appendix 10. These are again and again misreading the claim limitation to require a substantial offset. There's no inconsistency in the claim. What's substantially similar is the viewing direction and then there's an offset which is not substantially large or substantially small. It's just an offset, your honors. There's some discussion. I'd like to take a moment, exhibit C, which is at appendix 165. There's an accusation that it was polycom that kind of mixed up the two concepts of a viewpoint and a viewing direction. Not so. There's a limitation in this claim chart on 165 where we're pointing to figure 1G in the long patent as disclosing the substantially similar viewing directions. And then the next limitation is the viewpoints having an offset, which is that we're reciting to column seven of the long. We're not confusing any of these limitations at all, your honor. I'd like to say a word about Dr. Netravalli. Just a sentence. Yes. Three minutes extra. I appreciate it, your honor. One sentence. Dr. Netravalli did not address the long at all, especially nothing about what the PTAB decided about the long. And the dissent pointed that out at 33. And if you look at his declaration at 712 to 717, he has said not one word about the disclosure of the long. So nothing, the board cannot rely on Netravalli to overturn its original rejection of obviousness based on anything Netravalli said. Thank you, your honors. Thank you, counsel. We'll take the case under advisement. All rise. The honorable court is adjourned until tomorrow morning. It's an o'clock a.m.